**Affirmed and Memorandum Opinion filed August 20, 2019.**



**In the**

# Fourteenth Court of Appeals

## NO. 14-18-00039-CV

**ROBERT WOODWARD, Appellant**

**v.**

**SHARON WOODWARD, Appellee**

**On Appeal from the 246th District Court
Harris County, Texas
Trial Court Cause No. 2016-43632**

## MEMORANDUM OPINION

In this case involving a divorce with children, appellant Robert Woodward and appellee Sharon Woodward executed binding, irrevocable mediated settlement agreements (MSAs) pursuant to the Family Code and filed them with the trial court. *See* Tex. Fam. Code Ann. § 153.0071(d) (Supp.). The parties were entitled to judgment on the MSAs, and the trial court granted them an "MSA judgment." *See* Tex. Fam. Code Ann. § 153.0071(e) (Supp.). The trial court later signed a final decree of divorce that did not conform to the parties' MSA and subsequently

modified the final divorce decree on Sharon's motion for judgment nunc pro tunc. *See* Tex. R. Civ. P. 316, 329b(f). Robert brings four related issues, arguing: (1) the trial court lacked jurisdiction to sign the decree nunc pro tunc that made substantive changes to the final divorce decree after the court lost plenary power; (2) the change granted in the decree nunc pro tunc corrected a judicial instead of a clerical error; (3) the trial court abused its discretion and committed reversible error in granting the decree nunc pro nunc; and (4) the trial court improperly admitted certain of Sharon's exhibits at the hearing on the motion for judgment nunc pro tunc. We affirm the trial court's final decree of divorce nunc pro tunc as challenged.

## I. BACKGROUND

Sharon and Robert married in 1999 and have two minor children. In 2016, Sharon filed a petition for divorce from Robert; Robert filed a counterpetition. Because this suit involves conservatorship, access to, and support of the children, it is a SAPCR, i.e., a suit affecting the parent-child relationship. *See* Tex. Fam. Code Ann. § 101.032(a). The parties signed a mediated settlement agreement (MSA) regarding their children on February 16, 2017 and filed it with the trial court. *See* Tex. Fam. Code Ann. § 153.0071(d–e). They signed another MSA regarding their property on March 1, 2017 and filed it with the trial court. *See id.* In pertinent part, this MSA provided that Robert was to receive all property listed on the attached exhibit A, which expressly included $50,000 of Sharon's 401(k) as of March 1, 2017. The exhibit further stated: "Husband is awarded a lump sum of $50,000, regardless of market fluctuation."

On May 1, 2017, the trial court held a prove-up hearing. The record does not contain a transcript of this hearing. The judge's docket-sheet notation states: "Uncontested Divorce. W present w/atty. H's atty present. Amicus present. MSA judgment granted per In re Stephanie Lee and TFC 153.0071. Divorce granted. Entry

2

5/10/17."

On May 11, 2017, the trial court signed the agreed final decree of divorce, which awarded Robert $100,000 of Sharon's 401(k). The decree referenced the MSAs: "The agreements in this Final Decree of Divorce were reached in mediation . . . on February 16, 2017 (for the child portion) and March 1, 2017 (for the property portion). This Final Decree of Divorce is stipulated to represent a merger of a mediated settlement agreement between the parties." In addition, the decree stated: "To the extent there exist any differences between the mediated settlement agreement and this Final Decree of Divorce, this Final Decree of Divorce shall control in all instances." Neither party filed a post-trial motion to modify, correct, or reform the judgment. The trial court lost plenary power as of June 11, 2017. *See* Tex. R. Civ. P. 329b(d).

Robert subsequently presented Sharon with a Qualified Domestic Relations Order (QDRO)[1] that awarded Robert $100,000 of Sharon's 401(k).[2] Sharon then filed a motion for judgment nunc pro tunc, arguing that the final divorce decree contained a clerical error causing the distribution of the marital estate to be erroneously divided in a manner not in compliance with the MSA and asking the trial court to correct the clerical error. *See* Tex. R. Civ. P. 316, 329b(f). Robert filed a response in which he argued that the trial court could not change the decree because it would be correcting a judicial error.

At the hearing, the trial court indicated to the parties that it intended to grant Sharon's motion. Robert offered and the trial court admitted his responsive brief.

---

[1] A QDRO permits payment of a pension, retirement plan, or other employee benefits to an alternate payee. *See* Tex. Fam. Code Ann. § 9.101.

[2] The trial court already had signed a QRDO that awarded Sharon $100,000 of Robert's 401(k) in compliance with the MSA.

3

Sharon also offered various documents, to some of which Robert stipulated and to some of which he objected. The trial court admitted all of Sharon's exhibits.

On December 15, 2017, the trial court signed a final decree of divorce nunc pro tunc, which awarded Robert $50,000 of Sharon's 401(k) as his property. Robert did not file a motion for reconsideration or a request for findings of fact and conclusions of law. Robert timely appealed. *See* Tex. R. Civ. P. 329b(h).

## A. Applicable law

### 1. MSAs

The Family Code has a provision governing MSAs in SAPCRs. Tex. Fam. Code Ann. § 153.0071(d–e).[3] An MSA meeting the Family Code's requirements is irrevocable and binding on the parties. Tex. Fam. Code Ann. § 153.0071(d) (must include prominent display of irrevocability and be signed by parties and any party attorney who is present); *In re Lee*, 411 S.W.3d 445, 451–52, 458, 461 (Tex. 2013) (orig. proceeding).[4] A party is "entitled to judgment" on an MSA that meets the statutory requirements "notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." Tex. Fam. Code Ann. § 153.0071(e); *In re Lee*, 411 S.W.3d at 447, 452–53, 461. As long as the trial court is within its plenary power, a party is entitled to secure rendition of judgment on an MSA. *See In re Marriage of Russell*, 556 S.W.3d 451, 461 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

### 2. Plenary power

A trial court "has plenary power to . . . vacate, modify, correct, or reform [its]

---

[3] The Family Code has a corollary provision for MSAs in suits involving dissolution of marriages without children. *See* Tex. Fam. Code Ann. § 6.602(b); *In re Marriage of Atherton*, No. 14-17-00601-CV, 2018 WL 6217624, at *3 & n.5 (Tex. App.—Houston [14th Dist.] Nov. 29, 2018, pet. denied) (mem. op.).

[4] The full caption of this original proceeding is *In re Stephanie Lee*.

judgment within thirty days after the judgment is signed." Tex. R. Civ. P. 329b(d). Once plenary power has expired, a trial court's subject-matter jurisdiction cannot be reinvested. *See In re Vaishangi, Inc.*, 442 S.W.3d 256, 260–61 (Tex. 2014) (orig. proceeding) (per curiam).

After the trial court's plenary power expires, it may not set aside its judgment except by timely bill of review for sufficient cause. Tex. R. Civ. P. 329b(f); *see King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). However, a nunc pro tunc judgment permits the trial court to "at any time correct a clerical error in the record of a judgment." Tex. R. Civ. P. 329b(f) (citing Tex. R. Civ. P. 316 ("Clerical mistakes in the record of any judgment may be corrected by the judge in open court according to the truth or justice of the case . . . .")).

### 3. Clerical v. judicial errors

A clerical error is a discrepancy between the entry of a judgment in the record and the judgment that was actually rendered. *See Escobar v. Escobar*, 711 S.W.2d 230, 231–32 (Tex. 1986). A clerical error does not result from judicial reasoning or determination. *Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986) (per curiam).

In a nunc pro tunc judgment, the trial court only can correct the entry of a final written judgment that incorrectly states the judgment actually rendered. *Escobar*, 711 S.W.2d at 231–32. Even if the court renders judgment incorrectly, it cannot, nunc pro tunc, alter a written judgment that precisely reflects the incorrect rendition. *Id.* at 232. That is, a nunc pro tunc judgment may not be used to correct judicial errors. *Id.* at 231. A judicial error occurs in the rendering, rather than the entering, of a judgment and arises from a mistake of law or fact that requires judicial reasoning to fix. *Id.*; *Andrews*, 702 S.W.2d at 586. An attempted nunc pro tunc judgment rendered to correct a judicial error after plenary power has expired is void for lack of jurisdiction. *See Dikeman v. Snell*, 490 S.W.2d 183, 186 (Tex. 1973) (discussing

rule 329b).

## B. Standard of review

Whether the trial court previously rendered judgment and the contents of the judgment are fact questions for the trial court, but whether an error in the judgment is judicial or clerical is a question of law we review de novo. *See Escobar*, 711 S.W.2d at 232. When deciding whether a correction is of a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. *Id.* at 231. When, as here, no findings of fact or conclusions of law were requested in writing or filed, the trial court's judgment implies all findings of fact necessary to support it. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). We must defer to the trial court's factual determinations that a judgment has been rendered and its contents if some probative evidence supports them, but are not bound by the trial court's legal determination regarding the nature of any error in the original judgment. *Escobar*, 711 S.W.2d at 232. Evidence supporting the trial court's fact-finding may be in the form of oral testimony of witnesses, written documents, the court's docket sheet, and the judge's personal recollection. *In re A.M.C.*, 491 S.W.3d 62, 67 (Tex. App.—Houston [14th Dist.] 2016, no pet.). "We may review only a trial court's factual determination on whether a judgment has been rendered and its contents for legal and factual sufficiency of the evidence." *Id.*

## C. Clerical error in May 11, 2017 decree

Robert essentially argues the trial court had no jurisdiction and erred by issuing a final decree nunc pro tunc that is void. We disagree.

*Standard of proof.* We initially consider (and reject) the contention that this court must apply a "clear and convincing standard of proof . . . to grant a judgment

nunc pro tunc" based on a clerical error.[5] Robert cites authority from the First and Thirteenth Courts of Appeals, which is not binding. Our court refuses to apply any clear-and-convincing standard as "incorrect" in light of the Supreme Court of Texas's articulation of the "some probative evidence" standard in *Escobar*. *In re A.M.C.*, 491 S.W.3d at 67 & n.7 (citing *Escobar*, 711 S.W.2d at 232).

*"Some probative evidence."* There is no transcript of the May 1, 2017 prove-up hearing, so we cannot rely on an oral pronouncement by the trial court. The judge who presided over the prove-up and signed the final divorce decree was not the same judge who heard and signed the final decree nunc pro tunc, so we cannot rely on the judge's personal recollection. Nevertheless, we conclude there is legally- and factually-sufficient evidence to support the trial court's implied findings that the parties were entitled to secure rendition of judgment on their binding and irrevocable MSAs and that the trial court orally rendered such judgment on the MSAs on May 1, 2017.

There is evidence that the parties signed two MSAs, including the one signed on March 1, 2017, relating to property division, which were both filed with the trial court prior to the May 1 hearing. There is no dispute that the MSAs satisfied the requirements of section 153.0071(d). Accordingly, they were irrevocable and binding on Sharon and Robert. *See* Tex. Fam. Code Ann. § 153.0071(d); *In re Lee*, 411 S.W.3d at 461. As a result, under section 153.0071(e), the parties were "entitled to judgment on the [MSAs] notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law." *See* Tex. Fam. Code Ann. § 153.0071(e); *In re Lee*, 411 S.W.3d at 450 n.7, 461 ("Mandamus relief is available to remedy a trial court's erroneous refusal to enter judgment on an MSA.").

---

[5] Both parties cite this incorrect standard.

There is also evidence that the trial court orally rendered judgment on the MSAs at the prove-up hearing. The trial court's docket-sheet entry from the May 1, 2017 hearing states: "MSA judgment granted per In re Stephanie Lee and TFC 153.0071. Divorce granted. Entry 5/10/17." "Docket entries are some evidence of a rendered judgment and its contents" to support a challenged finding. *Escobar*, 711 S.W.2d at 232 (docket-sheet entry that "tracts . . . awarded as per . . . map" was legally-sufficient evidence of rendered judgment); *Ramirez v. Ramirez*, No. 03-18-00200-CV, 2019 WL 1561812, at *6, *8 (Tex. App.—Austin Apr. 11, 2019, no pet.) (mem. op.) (docket-sheet entry was some evidence that trial court previously rendered judgment on parties' informal settlement agreement such that nunc pro tunc decree corrected clerical error in decree regarding division of husband's 401(k)); *In re M.V.*, No. 14-08-00418-CV, 2009 WL 6407539, at *1–*2 (Tex. App.—Houston [14th Dist.] Sept. 1, 2009, no pet.) (mem. op.) (nunc pro tunc decree properly corrected amount of $500 monthly child support missing from decree where docket-sheet notation included $500 amount); *Bockemehl v. Bockemehl*, 604 S.W.2d 466, 469 (Tex. Civ. App.—Dallas 1980, no writ) (docket-sheet entry that "Divorce granted, per agreed judgment" was some evidence of rendered decree). The trial court's docket-sheet entry not only expressly states "MSA judgment granted," but also goes on to state "per In re Stephanie Lee and TFC 153.0071." Following Family Code section 153.0071 and *In re Lee*, "a party to an MSA is 'entitled to judgment' on the MSA [under subsection (e)] if it meets subsection (d)'s requirements." 411 S.W.3d at 452; *see* Tex. Fam. Code Ann. § 153.0071(d–e).

Robert does not argue on appeal that we should disregard this evidence.[6] Nor

---

[6] Robert claims that "[t]his particular trial court has a well known policy" of not reading MSAs into the record during prove-up hearings and did not read them into the record here. Robert, however, provides no supporting record citation or other authority. *See* Tex. R. App. P. 38.1(i). Again, there is no transcript of the prove-up hearing. Nor have we located any authority requiring

does Robert dispute that the final decree nunc pro tunc awards him $50,000 of Sharon's 401(k) in conformity with the parties' MSA. Instead, Robert primarily argues that "a judgment drafted by the parties containing an error is a judicial error rather than a clerical error." However, that the parties drafted, agreed to, and signed the final divorce decree does not mandate the error regarding the division of Sharon's 401(k) was a judicial one. *See Ramirez*, 2019 WL 1561812, at *5–*6 (allowing for possibility of "scrivener's error in drafting"). Nor does the fact that the decree states it will control if differences exist between the MSA and the decree. *See id.* at *7. None of the cases cited by Robert persuades us otherwise because they do not involve circumstances where some evidence supported that the trial court previously rendered judgment on the parties' MSAs.[7]

*Nunc pro tunc hearing and factual determination.* Robert also contends that the trial court "did not properly conduct the hearing to determine whether a judgment nunc pro tunc was appropriate." Robert asserts that the trial court "merely read[] the case information for [sic] the record, without hearing testimony, without swearing in witnesses and without the opportunity for either side to present evidence." Aside from providing one citation to the hearing transcript and to a First Court of Appeals case that states the abuse-of-discretion standard, Robert does not provide any authority or further explain his position. *See* Tex. R. App. P. 38.1(i). Nor does Robert point us to, and we have not located, where in the record he voiced any objection in the trial court to any conduct allegedly abusive of its discretion, or where the trial court ruled on any such complaint. *See* Tex. R. App. P. 33.1(a).

---

that trial courts read already-filed MSAs into the record in order to render judgment on them.

[7] Robert also asserts that the final divorce decree was made "a part of the rendering" because it was signed by the same judge who presided over the prove-up hearing. Robert again does not provide, and we have not located, any authority supporting this position. *See* Tex. R. App. P. 38.1(i).

Robert further argues that "there was no factual determination as to the rendering" and the trial court "skipped a necessary step." To the extent that Robert takes issue with the trial court's not issuing a written finding that judgment on the MSAs and their content—including that Robert was to receive $50,000 of Sharon's 401(k)—was rendered on May 1, 2017, we are to imply (and have implied) this finding. *See Worford*, 801 S.W.2d at 109. Moreover, we disagree that the trial court did not permit evidence or "skipped" any step. At the hearing, the trial court stated that it had read the briefs for and in response to the nunc pro tunc motion. The parties presented opposing arguments: whether the trial court (1) rendered judgment on the MSA at the May 1, 2017 prove-up hearing (argued by Sharon) or (2) rendered judgment in the May 11, 2017 final divorce decree (argued by Robert). And the trial court permitted both sides to offer, and it admitted, exhibits at the hearing.[8] These admitted exhibits included the signed May 11, 2017 final divorce decree, the MSAs executed by the parties and filed in the trial court, and the trial court's docket-sheet entries. Finally, when counsel for Sharon asked whether the trial court was "granting the judgment nunc pro tunc based on the fact that the Court's order did not comport with the terms of the Court's rendition per the MSA," the trial court answered, "Correct."

*Hearing exhibits*. Robert did make a relevancy objection to the admission of certain of Sharon's exhibits tendered at the hearing. On appeal, Robert provides little argument, much less any supporting authority, explaining how the trial court abused its discretion by admitting the five allegedly "irrelevant" exhibits, which consisted of various emails exchanged between the parties concerning the draft final divorce decree and Robert's attempt to secure his QDRO. *See* Tex. R. App. P. 38.1(i).[9] In

[8] Robert did not offer any additional evidence or make an offer of proof to the trial court. Nor does he point to any such evidence in his brief.

[9] The trial court appears to have agreed with Sharon that these documents were relevant to

10

any event, Robert stipulated to all of the exhibits material to our analysis and does not challenge the admission of such evidence on appeal.

## II.   CONCLUSION

We conclude the trial court did not err by determining that the error in the final divorce decree was clerical, granting Sharon's motion for judgment nunc pro tunc, and signing the final decree nunc pro tunc. We overrule Robert's issues and affirm the final divorce decree nunc pro tunc as challenged.


/s/     Charles A. Spain
        Justice


Panel consists of Justices Wise, Zimmerer, and Spain.

---

her defenses to any argument that the final divorce decree was a modification of the MSAs. On appeal, Robert does not argue that the final divorce decree modified the MSAs.